UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MICHAEL HICKEY, ET AL.                                      CIVIL ACTION

VERSUS                                                      NO. 10-4410

SHERIFF MARLIN GUSMAN, ET AL.                              DIVISION "3"

ORDER

On November 2, 2011, defendants' Motion in Limine [Doc. #34] and plaintiffs' Motion to

Extend Deadline for Discovery, for Listing Experts and for Adding Witnesses [Doc. #43] came on

for oral hearing before the undersigned.  Present were David Band on behalf of plaintiffs and Blake

Arcuri on behalf of defendants.  After the oral hearing, the Court took the motions under advisement

and ordered defendants to supplement the record with the expert report of Ronald Mason that they

seek to exclude.  Defendants have done so.  [Doc. #47].  Having reviewed the motions, the

oppositions, the case law and the parties' oral arguments, the Court rules as follow.

I.       **Background**

Plaintiffs' mother, Mary Hickey, had a checkered history of petty drug offenses.  After the

revocation of her probation when she tested positive for pain pills in her system during the drug

offender's program, she was confined to Female Dorm 2, South White Street Jail from September

1, 1998 until December 1, 2009.  During the booking process, Ms. Hickey underwent the medical

screening process, at which time she revealed a past history of depression, hypertension, chronic

obstructive pulmonary disease ("COPD") and degenerative disc disease.  She denied any history of a heart condition.  Ms. Hickey underwent a physical examination that revealed no significant findings.

When she went through booking, the medical staff obtained her consent to request her medication information from her pharmacy.  Dr. Gore, the jail's physician, ordered and administered Ms. Hickey's blood pressure medication that she had been receiving from her pharmacy.  Dr. Higgins, the jail psychiatrist, also prescribed medication to treat her depression.  On October 19 and 29 and November 4, 10 and 17, 2009, Ms. Hickey received treatment at the jail.  On all occasions, Ms. Hickey reported that she generally felt "ok," and she was released back to the general population.  She continued to receive her medication as prescribed.

In the early morning hours of December 1, 2009, inmates Chelsea Bergeron and Melanie Stinson, whose beds were near that of Ms. Hickey, noticed that Ms. Hickey was making a strange noise.  Bergeron and Stinson checked on Ms. Hickey, noticed that her eyes were open, she was unresponsive, and looked dead.  At 3:57 a.m., both inmates notified Deputy Kiwandra Polk of the situation.  Plaintiffs allege that Polk was not at her post at this time and that both Ms. Hickey and Bergeron and Stinson had tried to get her attention well before 3:57 a.m.

Polk entered the dorm to check on Ms. Hickey and notified Sergeant Brenda Sims of the situation.  Plaintiffs allege that at the time, Polk told everyone not to touch the patient when someone should have been performing CPR on Ms. Hickey.  Defendants contend that Sims immediately sought medical assistance.  Nurse Duane Townzel was notified of the situation at 4:00 a.m., and he notified Nurses Annette Wallace and Pamela Mackie, who arrived at the jail at approximately 4:05 a.m. They began to administer CPR.  Nurses David Oates and Townzel arrived on the scene at 4:07

a.m. and instructed Sims to request an ambulance.  Emergency medical technicians arrived at the jail at 4:21 a.m., and, at 4:54 a.m., they transported Ms. Hickey to University Hospital.  Dr. Rice at University Hospital pronounced Ms. Hickey dead at 5:10 a.m.

The autopsy performed on Ms. Hickey revealed no specific cause of death.  The autopsy revealed no evidence of trauma nor of scar tissue indicative of an earlier heart attack.   No pathological evidence revealed that Ms. Hickey died of a heart attack or congestive heart failure.

Plaintiffs, the sons of Ms. Hickey, then sued defendants under 42 U.S.C. §§ 1983 and 1988, alleging that defendant deprived her of her constitutional rights under the First, Fourth and Fourteenth Amendments by failing, *inter alia*, to provide her with adequate medical care.  Plaintiffs also bring a pendent wrongful-death action under Louisiana Civil Code article 2315.2.

## II.     Defendants' Motion in Limine

### A.     The Parties' Contentions

#### 1.     Defendants

Defendants ask the Court to exclude the testimony of plaintiff's expert witness, Ron Mason. Defendants note that Mason's expert report is a single paragraph in which he sets forth four "opinions," all based on "simple common sense" derived from his work experience.  Defendants argue that they can not discern his area of expertise or the actual substance of his opinion.  Mason offers no details of the vague "health problems" to which he refers.  He opines that there should have been a "specific diagnosis" but offers no details as to the diagnosis.

Defendants contend that Mason, an EMT and/or paramedic and/or medical corpsman, is not qualified to make a clinical judgment, as such activity is generally reserved to physicians and nurse practitioners.  Defendants maintain that his testimony is not within the realm of his expertise.  They

argue that he is not qualified to tender an expert opinion, his testimony would neither be reliable nor relevant, nor has Mason revealed any reasoning or methodology that could be tested or duplicated.

Should the Court allow Mason's testimony, defendants ask the Court to exclude any testimony as to any incidents, personal experiences or occurrences during his employment at the Orleans Parish Sheriff's Office as such testimony does not relate to Ms. Hickey.

Defendants also ask the Court to exclude a report issued by the United States Department of Justice ("USDOJ") in September 2009 (several months before the death of Ms. Hickey) after an investigation of the Orleans Parish Prison ("OPP").  The report purportedly addresses jail violence and mental health care.  Defendants note that Ms. Hickey is neither mentioned in the report nor was she a subject of the investigation.  Defendants assert that the report is hearsay.  Defendants also contend that plaintiff seeks to submit the report as a graphic portrayal of prison life, including allegations of jail violence and inadequate medical care.  Defendants argue that the prejudice that they will suffer as a result of the report far outweighs its probative value.

### 2.    Plaintiffs

Plaintiffs note that defendants have not deposed Mason.  Plaintiffs contend that Mason complied with the requirements of Rule 26 when he prepared his expert report.  Plaintiffs note that this will be the first time that Mason will be qualified as an expert.  They argue that he only needs to have specialized expertise in the field for which he is tendered as an expert.  Plaintiffs also note that Mason has been an EMT for 21 years and is qualified to express an opinion.  Mason opines that Polk should not have been away from her station and that, if it took 30 minutes to administer CPR to Ms. Hickey, it is obvious that she could not have survived.  Plaintiffs maintain that after thousands of rescues over the course of 21 years, Mason is qualified to know which victims he could

save and which ones are "far too gone."  Plaintiffs contend that, given the application of basic EMT and CPR principles, Mason can testify as to the survivability of Ms. Hickey in such a situation. Plaintiffs contend that Mason will supplement his expert report should the Court or defendants ask him to do so.

With regard to the USDOJ report, plaintiffs contend that a limiting instruction will avoid undue prejudice.  They maintain that the Court can order the jury to focus only on the inadequate staffing and inmate supervision, inadequate mental health and medical care and inadequate medication management sections of the report.  Plaintiffs believe that the jury will find that a number of problems mentioned in the report contributed to the death of Ms. Hickey, most notably the under-staffing problem and the lack of medical supervision and medication management.

Plaintiffs ask that, should the Court find Mason's report incomplete and the USDOJ report inadmissible, the Court set a new expert report deadline so that they may supplement Mason's report and redact the irrelevant sections of the USDOJ report.

### 3.      Law and Analysis

With regard to the expert report of Ronald Mason, the motion is granted.  Federal Rule of Evidence 702 allows admission of "scientific, technical, or other specialized knowledge" by a qualified expert if it will "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.  The trial court must act as a "gatekeeper" to exclude "junk science" that does not meet Rule 702's reliability standards by making a preliminary determination that the expert's testimony is reliable.  *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-48 (1999); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993).  *Daubert* requires admissible expert testimony to be both reliable and

relevant. *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (citing *Daubert*, 509 U.S. at 589). "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93. Although there are "no certainties in science," the expert must present conclusions "ground[ed] in the methods and procedures of science." *Id.* at 590. In short, the expert must "employ[ ] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

"[T]he Supreme Court [has] delineated certain factors to assist courts in evaluating the foundation of a given expert's testimony, though the Court carefully emphasized the nonexhaustive nature of the listing." *Knight*, 482 F.3d at 351 (citing *Daubert*, 509 U.S. at 593). Suggested considerations include: "whether the theory or technique the expert employs is generally accepted; whether the theory has been subjected to peer review and publication; whether the theory can and has been tested; whether the known or potential rate of error is acceptable; and whether there are standards controlling the technique's operation." *Id.* (citing *Daubert*, 509 U.S. at 593). There is no formula, and the court must judge admissibility based on the particular facts of the case. *See Kumho Tire Co.*, 526 U.S. at 150. Encompassed, however, in the determination of whether expert testimony is relevant is whether it is helpful to the jury, which is the "central concern" of Rule 702. *United States v. Rahm*, 993 F.2d 1405, 1413 (9th Cir. 1993); *see also Daubert*, 509 U.S. at 591.

Applying the *Daubert* analysis to Mason's report, the Court finds several fatal flaws with the report. There is no evidence in the record that Mason's theory or technique is generally accepted by the scientific community nor that his theories have been subjected to peer review and publication.

Neither is there evidence of whether Mason's theory has been tested, whether the potential rate of error is acceptable nor whether any standard controlled Mason's technique's operation.  Indeed, Mason bases his entire theory on "common sense," and plaintiffs fail to cite the Court to any case law – nor has the Court found any – that would support the argument that one witness's common sense theories will assist the trier of fact to understand the evidence or to determine a fact in issue and thus qualifies as an expert opinion.

With regard to the USDOJ report, the motion is denied. Plaintiffs allege a conditions-of-confinement claim. While plaintiffs failed to sue the prison itself or any other municipality, plaintiffs allege in their complaint that defendants had, *inter alia*, systematically rendered inadequate medical care to prisoners throughout the years. [*See, e.g.,* Doc. #4 at ¶¶ 33(1)-(6) & 34(1)-(2)]. When a plaintiff asserts a conditions-of-confinement claim, courts have routinely held that reports such as the USDOJ report here are admissible.  Neither party's discussion of the USDOJ report addresses either the factors used to analyze whether the report is admissible under Federal Rule of Evidence 803(8)(C) or other cases that have dealt with the admissibility of this type of report.  *See, e.g., Shepherd v. Dallas County*, 591 F.3d 445, 456–57 (5th Cir. 2009); *Bonilla v. Jaroczyk*, 354 Fed. Appx. 579, 582–83 (2d Cir. 2009); *Roland v. Johnson*, 933 F.3d 1009, 1991 WL 84346, *2 (6th Cir. 1991) (per curiam); *Bell v. Harris County*, Civ. A. No. H-10-2421, 2011 WL 2494103 (E.D. Tex. June 22, 2011); *Wilks v. Stowers*, No. C07-2084, 2010 WL 2104153, *9 (W.D. Wash. May 25, 2010); *Johnson v. Baker*, No. 1:08-CV-00038, 2009 WL 3486000, **2–3 (W.D. Ky. Oct. 23, 2009).

Defendants' argument that the USDOJ letter is inadmissible hearsay conflicts with Rule 803(8)(C), which provides that "in civil actions . . . factual findings resulting from an investigation made pursuant to authority granted by law" are not excluded by the hearsay rule "unless the sources

7

of information or other circumstances indicate lack of trustworthiness."  Fed. R. Evid. 803(8)(C).

In *Shepherd*, the Fifth Circuit stated that "Rule 803(8)(C) contemplates the admission of reports,

such as this, containing 'factual findings resulting from an investigation made pursuant to authority

granted by law.'" 591 F.3d at 457-58.  In other cases in which this issue has arisen, courts have

recognized that such reports are not excluded by the hearsay rule.  *See Bonilla*, 354 Fed. Appx. at

582; *Roland*, 1991 WL 84346 at *2; *Johnson*, 2009 WL 3486000 at **2–*3; *Wilks*, 2010 WL

2104153 at *9 ("Defendants erroneously argue the Department of Justice report is hearsay.").

Because defendants have not argued that the USDOJ's sources of information or any other

circumstances indicate a lack of trustworthiness, the Court is not persuaded that the USDOJ letter

is inadmissible hearsay.

In addition, the Court finds that any risk of prejudice to defendants may be cured by

redacting  the irrelevant sections of the report and by issuing a limiting instruction at trial.  While

the findings in the USDOJ report are undoubtedly prejudicial, it remains that they are probative of

plaintiffs' conditions-of-confinement claims as well.

## III. Plaintiffs' Motion to Extend Deadline for Discovery, for Listing Experts and for Adding Witnesses

### A.     The Parties' Contentions

#### 1.     Plaintiffs

Plaintiffs seek to extend the deadlines in this lawsuit to hire one additional expert, to take

one additional deposition and to add two additional witnesses.

Plaintiffs seek to depose Deputy Polk, who defendants were unable to produce earlier.

Defendants do not object to Polk's deposition.

Plaintiffs contend that at a recent deposition, they learned that an additional witness,

Sentrelle Conerly, was present in the dorm at the time of the alleged incident.  Plaintiff notes that defendants object to the addition of Conerly to the witness list and to her deposition despite that plaintiffs did not object to the late addition of Deputy Corey D. Bono.

Plaintiffs also seek to retain an additional expert, Dr. Amy Gutierrez, M.D., because defendants seek to exclude Mason.  Gutierrez has offered the preliminary opinion that Ms. Hickey had a seizure or cardiac event as a result of her withdrawal from pain medicine for her back or from problems breathing.  Gutierrez is allegedly an expert on seizures.

### 2.    Defendants

With regard to Conerly, defendants argue that her alleged involvement in the incident here was revealed by plaintiff Hickey at his own deposition.  Defendants thus argue that counsel for plaintiffs could have developed this witness at any point before his deposition, and her involvement is not "newly-discovered" evidence to anyone but defendants themselves.  Defendants contend that they will suffer prejudice not only because of her late addition to the witness list but also because they may need to amend and/or supplement the expert report of George Armbruster, whose testimony is allegedly similar to that to which Conerly will testify.  Defendants note that they provided the investigative report of Deputy Bono to plaintiffs on May 19, 2011 in response to discovery and that plaintiffs consider Bono's report favorable to their case.  According to defendants, that is why plaintiffs never objected to the late addition of Bono.

Defendants also ask the Court to deny plaintiffs' request to retain an additional expert witness.  Defendants contend that after the disclosure of the parties' expert reports, nothing has occurred that constitutes exigent circumstances to allow plaintiffs to retain a new expert witness.  Defendants note that plaintiffs only moved to retain one after defendants filed their motion in limine

to exclude the testimony of Mason.  Defendants contend that they would suffer prejudice should plaintiff be allowed to retain an additional expert not only because the addition may necessitate the amendment and/or supplementation of the expert reports but also because additional experts may need to be retained at significant cost.

### 3.    Law and Analysis

With regard to the deposition of Deputy Polk, the motion is granted as unopposed.

Federal Rule of Civil Procedure 16 grants the Court the authority to control and expedite pre-trial discovery through a scheduling order, and provides that a scheduling order "shall not be modified except upon a showing of good cause and by leave of the district judge."  Fed. R. Civ. P. 16(b).  Pursuant to Rule 16, the Court has "broad discretion" to enforce its scheduling order.  *See Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990) ("[O]ur court gives the trial court 'broad discretion to preserve the integrity and purpose of the pretrial order.'") (quoting *Hodges v. United States,* 597 F.2d 1014, 1018 (5th Cir. 1979).  In *Geiserman*, the Fifth Circuit identified four factors that a court should consider in exercising its discretion to exclude evidence: (1) the party's explanation for its failure to timely identify its witnesses; (2) the importance of the proposed testimony; (3) any potential prejudice in allowing the admission of the testimony; and (4) the availability of a continuance to cure such prejudice.  893 F.2d at 790.

With regard to the addition of Sentrelle Conerly, the motion is denied.  Plaintiffs themselves knew of her involvement in the incident here, and both plaintiffs could and should have revealed her existence earlier.  There is no "good cause" to amend the Scheduling Order as to Conerly.  Plaintiffs wholly fail to provide an explanation for their failure to identify Conerly as a witness when plaintiffs themselves were the only parties to this lawsuit who knew of her presence.  In addition, plaintiffs

provide no argument as to the importance of the proposed testimony, and there is no indication that Conerly's testimony will be any different from that of the other two witnesses to the incident, Bergeron and Stinson.  As defendants correctly note, Conerly's presence is "newly-discovered" as to them alone, and, because the Court finds that they will suffer prejudice given her late addition to the witness list, the Court denies the motion as to Conerly.

With regard to the addition of Dr. Amy Gutierrez, the motion is also denied.  The deadlines for expert reports have long passed, and plaintiffs have not explained their failure to timely identify Gutierrez as a witness.   The potential addition of Gutierrez at this late date would prejudice defendants in that they would most likely need to retain another expert, and the Court is unwilling to re-open the exchange of expert reports.  As noted above, plaintiffs seek to add Gutierrez because she has offered the preliminary opinion that Ms. Hickey had a seizure or cardiac event as a result of her withdrawal from pain medicine for her back or from problems breathing.  This, however, is far different from the expert testimony that Mason would have provided and would potentially necessitate a whole new round of discovery on causation now after the discovery deadline has also long passed.  Plaintiffs should have and could have identified Gutierrez at a much earlier date in this litigation but simply failed to do so.

IV.   **Conclusion**

For the foregoing reasons,

**IT IS ORDERED** that defendants' Motion in Limine [Doc. #34] and plaintiffs' Motion to Extend Deadline for Discovery, for Listing Experts and for Adding Witnesses [Doc. #43] are GRANTED IN PART and DENIED IN PART as outlined above.

New Orleans, Louisiana, this 13th day of December, 2011.

11

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**